Todd Blanche
Acting Attorney General of the United States
Jeremy J. Kelley
Assistant United States Attorney
Eastern District of Washington
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUN 24 2026

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

PATRICK ALAN BUCKNUM

Defendant.

Case No.: 2:26-cr-0062-TOR

Plea Agreement

Plaintiff United States of America, by and through Jeremy J. Kelley, Assistant United States Attorney for the Eastern District of Washington, and Defendant Patrick Alan Bucknum ("Defendant"), both individually and by and through Defendant's counsel, Keith M. Woodwell and Jake Taylor, agree to the following Plea Agreement.

1.    Waiver of Indictment

Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges brought by the Unites States in an Information.

PLEA AGREEMENT - 1

2.    <u>Guilty Plea and Maximum Statutory Penalties</u>

Defendant agrees to enter a plea of guilty to the single Count in the Information, which charges Defendant with Wire Fraud, in violation of 18 U.S.C. § 1343, a Class C felony.

Defendant understands that the following potential penalties apply:

    a.    a term of imprisonment of up to twenty years;

    b.    a term of supervised release of up to three years;

    c.    a fine of up to $250,000; and

    d.    restitution.

3.    <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

    a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

PLEA AGREEMENT - 2

4.    <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.    sentencing is a matter solely within the discretion of the Court;

b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

5.    <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

a.    pleading guilty in this case may have immigration consequences;

b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

PLEA AGREEMENT - 3

> d.     no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

6.     Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

> a.     the right to a jury trial;
>
> b.     the right to see, hear and question the witnesses;
>
> c.     the right to remain silent at trial;
>
> d.     the right to testify at trial; and
>
> e.     the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7.     Admissibility of Facts and Prior Statements

By signing this Plea Agreement, Defendant admits the truth of the facts set forth in the Factual Basis section of this Plea Agreement and agrees that these facts, along with any written or oral statements Defendant makes in court, shall be deemed usable and admissible against Defendant in any subsequent legal proceeding,

PLEA AGREEMENT - 4

including criminal trials and/or sentencing hearings, under Federal Rule of Evidence 801(d)(2)(A).

Defendant acknowledges, admits, and agrees that by signing this Plea Agreement, Defendant is expressly modifying and waiving Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to any facts Defendant admits and/or any statements Defendant makes in court.

8. Elements of the Offense

The United States and Defendant agree that in order to convict Defendant of Wire Fraud, in violation of 18 U.S.C. § 1343, the United States would have to prove the following beyond a reasonable doubt.

9. *First*, on or about August 16, 2024, within the Eastern District of Washington and elsewhere, Defendant knowingly participated in a scheme or plan to defraud for purposes of obtaining money or property by false or fraudulent pretenses, representations or promises;

10. *Second*, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

11. *Third*, Defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

12. *Fourth*, Defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

13. Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

PLEA AGREEMENT - 5

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

At all times relevant to this Information, Defendant was a resident of Wenatchee or East Wenatchee, Washington, in the Eastern District of Washington.

Community Clinic Network ("CCN") is a company located in Wenatchee, Washington, in the Eastern District of Washington. CCN was formed in 2010 to manage health care payment contracts for a conglomerate of health care clinics spread across Washington. CCN was formed to improve quality and achieve cost-savings in the care the health clinics provided. CCN would enter contracts with Medicaid Managed Care Organizations (MCOs) that shifted risk to CCN if costs were above a baseline cost, but CCN would receive money for cost savings. All costs of a given member, including clinic and hospital care were part of the risk pool.

Some owner clinics took distributions of shared savings from CCN, but generally left large balances in the control and custody of CCN. The funds were often viewed as rainy-day funds for most of the clinics. The funds were saved to protect from future volatility from losses that could be incurred by taking risk. The reserves were also needed for future growth of the organization and investment in other opportunities. There were also potential incentives for owner clinics to leave funds with CCN. For instance, the owner companies were able to count the funds as contingent receivables that were not listed on their balance sheets. CCN was also able to invest the funds on behalf of the owner companies.

From 2010 through 2016, Defendant managed CCN's finances and operations while maintaining full-time employment as the Chief Executive Officer of Columbia Valley Community Health (CVCH). In 2017, Defendant left CVCH for full-time employment at CCN. In 2017, Defendant was employed as the Chief Executive Officer for CCN in Wenatchee, Washington, and also functioned as the Chief

PLEA AGREEMENT - 6

Financial Officer and Chief Operations Officer. Defendant continued as the Chief Financial Officer and Chief Operations Officer for CCN until his departure in 2024.

As one of the signers on accounts, Defendant had control of CCN's finances and could write checks and initiate wire transfers from CCN's financial accounts. CCN's board members regularly reviewed CCN's financial statements but entrusted management of CCN's financial activities primarily to Defendant. Despite regular board meetings and annual external review of financial statements, Defendant held a position of trust that allowed him relatively unfettered access to the tens of millions of funds stored with CCN.

Beginning in or about April 2017, Defendant devised a scheme and artifice to obtain money from CCN's main checking account under false and fraudulent pretenses, representations, and promises. Without the knowledge of or authorization from the CCN Board, Defendant began to embezzle funds from the CCN account to his personal E*TRADE account, and then use the funds for trading stocks, options, and exchanged-traded funds ("ETFs"). Defendant intended to make a profit on the trading, return the embezzled funds to CCN's account, and keep the difference. Defendant would also use some of the CCN funds in his E*TRADE account for personal benefit. Distributions out of the checking account were covered up by making real transfers or by manipulating financial records to show transfers to and from CCN's Insured Cash Sweep ("ICS") account.[1]

However, Defendant had no prior experience trading stocks, options, or ETFs. Social media influenced Defendant's trading strategy, which was generally bearish and highly leveraged. Due to Defendant's poor trades, his losses of CCN funds quickly mounted, which resulted in Defendant embezzling more funds from CCN in

---

[1] An ICS is a product offered by some financial institutions in which the institution will place deposits received from customers into interest-bearing accounts at other FDIC-insured banks in amounts below $250,000 to ensure full FDIC coverage while maintaining liquidity. CCN used the ICS account as a savings account to earn interest on extra funds, typically .02% interest.

PLEA AGREEMENT - 7

an attempt to recover the losses.

In total, between 2017 and 2023, Defendant embezzled approximately $30,390,686.52 from CCN's accounts to facilitate his scheme to engage in trading. During that same period, Defendant also transferred approximately $7,358,300.06 back into CCN accounts, resulting in a net loss of approximately $23,032,386.46 to CCN from funds embezzled to Defendant's E*TRADE account.

From 2017 through 2023, to facilitate the scheme and artifice to defraud, Defendant took money from CCN's accounts in random increments and placed it in his personal E*TRADE account. Defendant's first two transfers from CCN's ICS account to his E*TRADE were Automated Clearing House ("ACH") transfers via interstate electronic wires for $10,000 and $100,000.

Defendant also funded his E*TRADE account through checks drawn from CCN's primary checking account with US Bank. Defendant would void the checks in CCN's accounting systems and electronically alter bank statements as needed to conceal his theft of CCN funds. Defendant then transferred money, through the use of interstate wires, from CCN's ICS account to CCN's U.S. Bank checking account to ensure the checking account's balance remained constant and conceal his embezzlement. Defendant was aware that the CCN board was more likely to review the balance of the checking account than the ICS account.

By 2019, Defendant viewed the trading losses as insurmountable. Defendant met with an attorney at that time but ultimately decided not to come forward then. In March 2023, Defendant transferred $5,000,000 in CCN funds through a check deposited into his E*TRADE account as a final attempt to recover the lost trading funds. The attempt was ultimately unsuccessful.

On October 7, 2024, Defendant, through his legal counsel, voluntarily terminated his employment and relationship with CCN. In his resignation, Defendant admitted embezzling and losing approximately $20,000,000 of CCN's money.

PLEA AGREEMENT - 8

In addition to embezzling funds for use in speculative trading, Defendant's scheme also involved embezzling CCN funds for other personal uses. On or about November 4, 2021, Defendant embezzled CCN funds through the use of interstate wires to purchase a 2021 Tesla Model 3, VIN 5YJ3E1EC6MF099342, for $77,925.51 from Tesla, Inc. These funds were spent from Defendant's E*TRADE account and are traceable to embezzled CCN funds.

On or about June 11, 2024, Defendant embezzled CCN funds to purchase a Cobalt 220 boat serial number FGE22170J405 and cobalt boat trailer serial number 4FBBS222851013349 for $33,004.59 from Valley Marine through check number 2219 written from CCN's U.S. Bank checking account.

On or about June 23, 2024, Defendant embezzled CCN funds to purchase a 2024 Chevrolet Silverado EV, VIN No. 1GC40ZEL0RU300510, from Jet Chevrolet for $103,800.75 through check number 2234 written from CCN's U.S. Bank checking account.[2] Defendant subsequently changed the check entry in CCN's accounting system to falsely and fraudulently show the check was issued for "CDW Server Upgrades."

On or about August 16, 2024, Defendant embezzled $1,199,210.57 from CCN through the use of interstate wires to purchase gold coins. Defendant later sold the gold coins for a slight profit and on February 20, 2025, used $1,287,838.16 in proceeds from selling the gold to purchase four-hundred 1 oz American Gold Eagle Coins of random years, seventy 1 oz Platinum Coins, and sixty-six 2024 1 oz American Silver Eagle coins.

In total, accounting for all Defendant's transfers to Defendant's E*TRADE account, transfers back to CCN accounts, and use of CCN funds for personal expenses as set forth above, Defendant caused a loss to CCN of $24,368,427.37.

---

[2] Defendant made a separate additional $5,000 downpayment on the vehicle.

PLEA AGREEMENT - 9

14.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Information or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

15.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.    Base Offense Level

The United States and the Defendant agree that the base offense level for Wire Fraud is 7. U.S.S.G. §2B1.1(a)(1).

b.    Special Offense Characteristics and adjustments

The United States and the Defendant agree that Defendant's base offense level is increased by 20 levels because Defendant caused loss more than $9,500,000, but less than $25,000,000. U.S.S.G. §2B1.1(b)(1)(K).

The United States and Defendant agree that Defendant's base offense level is increased by 2 levels because Defendant used a position of trust in a manner that significantly facilitated the commission and concealment of the offense. U.S.S.G. §3B1.3.

The United States and Defendant have no agreement whether any other specific offense characteristics or adjustments are applicable. The United States and Defendant may argue for or against any additional specific offense characteristics or adjustments identified in the Pre-Sentence Investigation Report.

c.    Acceptance of Responsibility

The United States will recommend that Defendant receive a downward

PLEA AGREEMENT - 10

adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

  i. accepts this Plea Agreement;

  ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

  iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

  iv. provides complete and accurate information during the sentencing process; and

  v. does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

  d. <u>Agreements Regarding Representations to the Court</u>

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

PLEA AGREEMENT - 11

i. The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

ii. The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

iii. The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

iv. The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

v. The United States and Defendant may each respond to any arguments presented by the other;

vi. In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

PLEA AGREEMENT - 12

vii. In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii. The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix. Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

e. No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.

f. Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

16. Incarceration

PLEA AGREEMENT - 13

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

The United States agrees to recommend a sentence of no more than the low end of the Guidelines, as calculated by the United States.

Defendant may recommend any legal sentence.

17. Supervised Release

The United States and Defendant each agree to recommend three (3) years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

PLEA AGREEMENT - 14

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

    b.  Defendant must not open, possess, use, or otherwise have access to any checking account, ATM card, or credit card, without the advance approval of the supervising officer.

    c.  Defendant must provide the supervising officer with access to any requested financial information and authorize the release of any financial information. The probation office may share financial information with the U.S. Attorney's Office. Defendant must disclose all assets and liabilities to the supervising officer. Defendant must not transfer, sell, give away, or otherwise convey any asset, without the advance approval of the supervising officer.

    d.  Defendant must not incur any new debt, open additional lines of credit, or enter into any financial contracts, without the advance approval of the supervising officer

18.   <u>Criminal Fine</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

PLEA AGREEMENT - 15

19.    Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

20.    Restitution

The United States and Defendant agree that restitution is appropriate and mandatory, without regard to Defendant's economic situation, to identifiable victims who have suffered physical injury or pecuniary loss, pursuant to 18 U.S.C. §§ 3663, 3663A, 3664.

Pursuant to 18 U.S.C. § 3663(a)(3), Defendant voluntarily agrees to pay restitution for all losses caused by Defendant's individual conduct, in exchange for the United States not bringing additional potential charges, regardless of whether counts associated with such losses will be dismissed as part of this Plea Agreement. With respect to restitution, the United States and Defendant agree to the following:

a.    Restitution Amount and Interest

The United States and Defendant stipulate and agree that the Court should order restitution in an amount of $24,368,427.37, and that interest on this restitution amount, if any, should be waived.

b.    Payments

To the extent restitution is ordered, the United States and Defendant agree that the Court will set a restitution payment schedule based on Defendant's financial circumstances. 18 U.S.C. § 3664(f)(2), (3)(A). Regardless, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards restitution.

c.    Treasury Offset Program and Collection

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies.

If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31

PLEA AGREEMENT - 16

U.S.C. § 3716.

Defendant understands that the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. 18 U.S.C. §§ 3572, 3613, and 3664(m).

Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees to provide waivers, consents, or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

        d.    Obligations, Authorizations, and Notifications

Defendant agrees to truthfully complete the Financial Disclosure Statement that will be provided by the earlier of 30 days from Defendant's signature on this plea agreement or the date of Defendant's entry of a guilty plea, sign it under penalty of perjury, and provide it to both the United States Attorney's Office and the United States Probation Office. Defendant acknowledges and understands that Defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute Defendant's failure to accept responsibility under U.S.S.G §3E1.1.

Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on Defendant upon the signing of this Plea Agreement. Until Defendant's fine and restitution orders are paid in full, Defendant agrees to provide

PLEA AGREEMENT - 17

waivers, consents or releases requested by the United States Attorney's Office to access records to verify the financial information.

Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before Defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations. Further, pursuant to 18 U.S.C. § 3664(k), Defendant shall notify the court and the United States Attorney's Office within a reasonable period of time, but no later than within 10 days, of any material change in Defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts or any other acquisition of assets or money.

Until Defendant's fine and restitution orders are paid in full, Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Pursuant to 18 U.S.C. § 3612(b)(F), Defendant understands and agrees that until Defendant's fine and restitution orders are paid in full, Defendant must notify the United States Attorney's Office of any change in the mailing address or residence address within 30 days of the change.

21.    Judicial Forfeiture:

The parties agree forfeiture applies. *See* 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). With respect to forfeiture, the parties agree to the following:

(a)    Forfeitable Property:

Defendant stipulates and agrees to forfeit all right, title, and interest, to the United States, in all property, real or personal, which constitutes or is derived from proceeds traceable to offenses in violation of 18 U.S.C. § 1343, and any property traceable to such property, including, but not limited to, the following listed assets:

PLEA AGREEMENT - 18

BANK ACCOUNTS

- Any and all funds held in Chase Bank Account ending in 3395

VEHICLES/CONVEYANCES

- a 2024 Chevrolet Silverado EV, VIN No. 1GC40ZEL0RU300510;

- a 2021 Tesla Model 3, VIN 5YJ3E1EC6MF099342; and,

- a Cobalt 220 boat serial number FGE22170J405 and cobalt boat trailer serial number 4FBBS222851013349.

COINS

- four-hundred 1 oz American Gold Eagle Coins of random years;

- seventy 1 oz Platinum Coins; and,

- sixty-six 2024 1 oz American Silver Eagle coins

MONEY JUDGMENT

The United States shall seek a forfeiture money judgment in this matter and will not seek to forfeit specific property, except as set forth in this Plea Agreement or authorized by law. The United States will not seek to forfeit proceeds in an amount exceeding what Defendant actually obtained as a result of the crime. *See Honeycutt v. U.S.*, 137 S. Ct. 1626 (2017).

(b)   Money Judgment

Defendant agrees to forfeit to the United States all right, title, and interest in the following property: a $24,368,427.37 money judgment, which represents the amount of proceeds Defendant obtained as a result of his illegal conduct.

The United States agrees to apply net funds received from the sale of forfeited personal property, listed in paragraph 21(a) to the money judgment.

(c)   Substitute Property

Defendant understands the United States may seek for Defendant to forfeit substitute property in satisfaction of the money judgment if the United States can establish the following regarding the above-described property (*i.e.*, the money judgment): a) it cannot be located upon the exercise of due diligence; b) it has been

PLEA AGREEMENT - 19

transferred or sold to, or deposited with, a third party; c) it has been placed beyond the Court's jurisdiction; d) it has substantially diminished in value; e) it has been commingled with other property and cannot be divided without difficulty. *See* 18 U.S.C. § 982(b)(1); 21 U.S.C. § 853(p). The United States will not seek to forfeit substitute property from other defendants or co-conspirators; it may only forfeit substitute property from Defendant. *See* 21 U.S.C. § 853(p).

(d)    Application of Forfeited Property to Restitution:

Defendant understands the United States will seek restitution for the victim(s) in this case independent of this money judgment.    It is the parties' mutual understanding that the United States Attorney's Office will seek approval to apply the proceeds of any forfeited assets to Defendant's restitution obligations. Defendant recognizes the final decision to approve this application rests with the Attorney General. *See* 18 U.S.C. § 981(d), (e); *see also* 28 C.F.R. 9 *et. seq.*

(e)    Cooperation on Forfeited Assets:

Defendant agrees to cooperate with the United States in passing clear title on all forfeited assets and to execute any and all forms and pleadings necessary to effectuate such forfeiture of assets. Defendant also agrees to assist the United States in locating any assets that 1) are the proceeds of illegal conduct (as outlined in this Plea Agreement) and 2) have not been dissipated. If such assets are located, then Defendant will stipulate to their forfeiture.

(f)    Waivers:

Defendant acknowledges that all the property covered by this agreement is subject to forfeiture as proceeds of illegal conduct. Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the asset(s). Defendant agrees to waive oral pronouncement of forfeiture at the time of sentencing. *See* Fed. R. Crim. P. 32.2(b)(4)(B). The Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea

PLEA AGREEMENT - 20

Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

Defendant also agrees to hold the United States, and any and all agencies, and their agents and employees harmless from any and all claims whatsoever in connection with the investigation, the prosecution of charges, and the seizure and forfeiture of property covered by this Plea Agreement.

Defendant waives further notice of any federal, state, or local proceedings involving the forfeiture of assets the Defendant is agreeing to forfeit in this Plea Agreement.

(g)    Non-Abatement of Criminal Forfeiture:

Defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive him, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if Defendant had survived, and that determination shall be binding upon Defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

22.    Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

23.    Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

PLEA AGREEMENT - 21

24. <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives any and all of Defendant's rights to appeal any and all aspects of Defendant's conviction and any and all aspects of the sentence the Court imposes, on any and all grounds.

Defendant expressly waives Defendant's right, even if otherwise authorized by the United States Constitution or federal law, to challenge in the district court, to move to withdraw Defendant's plea based on, or to appeal the validity and/or entry of, any and all charging instruments, any and all plea agreements, any and all pleadings, any and all communications between any and all defense counsel and any and all Assistant United States Attorneys, and/or any and all guilty pleas in the above-captioned matter based on any and all arguments that the United States, the United States Attorney's Office for the Eastern District of Washington, the Deputy Attorney General, any and all First Assistant United States Attorneys for the Eastern District of Washington, any and all Criminal Chiefs for the United States Attorney's Office for the Eastern District of Washington, any and all Assistant United States Attorneys for the Eastern District of Washington, and/or any and all attorneys for the government, are in any way unauthorized to bring, seek, file, and/or resolve any and all aspects of the above-captioned matter, case, and/or charges.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

PLEA AGREEMENT - 22

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

25. <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.    Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

    b.    The United States may prosecute Defendant on all available charges;

    c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d.    The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

PLEA AGREEMENT - 23

26. <u>Waiver of Attorney Fees and Costs</u>

Defendant agrees to waive all rights Defendant may have under the "Hyde Amendment," Section 617, P.L. 105‑119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including, without limitation, any charges to be dismissed pursuant to this Plea Agreement or any charges previously dismissed or not brought as a result of this Plea Agreement).

27. <u>Integration Clause</u>

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Todd Blanche
Acting Attorney General

_____          5/7/2026
Jeremy J. Kelley                         _____
Assistant United States Attorney          Date

//

//

PLEA AGREEMENT - 24

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of mys attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

/s/ * Patrick Alan Bucknum                May 7, 2026
Patrick Alan Bucknum                      Date
Defendant
*approved via email with counsel

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____          May 7, 2026
Keith M. Woodwell                         Date
Jake Taylor
Attorneys for Defendant

PLEA AGREEMENT - 25